# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 08 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple iPhone, IMEI ID: 356429109245259, more particularly described in Attachment A-2

Case No. **19MJ4977**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-2

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963, 841, 846, 843(b) | Importation of Controlled Substances; Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

HSI Special Agent Gary Roy
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/8/19

_____
Judge's signature

City and state: San Diego, CA

Honorable Allison M. Goddard, U.S. Magistrate Judge
Printed name and title

## **ATTACHMENT A-2**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone
>IMEI ID: 356429109245259
>**(Target Device 2)**

The Target Devices are currently in the vault located at 2225 Niels Bohr Ct, in San Diego, California.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of 90 DAYS:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, 963, 841, 846, and 843(b).

# AFFIDAVIT

I, Special Agent Gary Roy, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

>Apple iPhone
>Model No. A1586
>IMEI ID: 355403076564548
>**(Target Device 1)**

>Apple iPhone
>IMEI ID: 356429109245259
>**(Target Device 2)**

>Apple iPhone
>IMEI ID: 357263097893195
>**(Target Device 3)**

>Motorola
>Model No. XT1921-3
>IMEI ID: 351841093107748
>**(Target Device 4)**

(hereinafter **Target Devices**) as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, 963, 841, 846, and 843(b), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Pedro RUIZ-Mejia ("Defendant") for importing approximately 10.90 kilograms of cocaine from Mexico into the United States. *See U.S. v. Ruiz-Mejia*, Case No. 19CR4116-BAS (S.D.

Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the evidence vault located at 2225 Niels Bohr Ct, in San Diego, California.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (ICE-HSI) since February 2018. I am currently assigned to the Deputy Special Agent in Charge, San Ysidro Office, Contraband Smuggling Group 1. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber

Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

1. On September 17, 2019, at approximately 1:05 p.m., defendant Pedro RUIZ-Mejia ("Defendant") applied for permission to enter the United States at the San Ysidro Port of Entry. Defendant was the driver and sole occupant of a white 2013 Hino tow truck. Defendant was referred for secondary inspection, and Customs and Border Protection Officers discovered packages concealed within the light bar of the vehicle which tested positive for cocaine[1]. Agents released the vehicle from secondary inspection and began following the vehicle and maintaining visual surveillance. The agents observed Defendant engage in suspicious driving behavior that was indicative of conducting counter surveillance. For example, agents observed Defendant stop his vehicle on more than one occasion in the median of the road and wait for a brief period of time giving him a view of any following vehicles, they observed the defendant enter a dead end street and park on the side of the road providing a view of following vehicles, they observed Defendant making phone calls and looking all around his vehicle at other motorist during these unexplained stops. During the surveillance, Defendant pulled into a gas station and hooked another vehicle up for towing. During this time, the law enforcement surveillance vehicle was unintentionally in close proximity to Defendant's vehicle and may have been observed. After Defendant delivered the towed vehicle to its destination and dropped the vehicle's owner off at the bus stop, Defendant again engaged in counter-surveillance behavior but going down a dead-end street and stopping his vehicle on the side of the road and making a phone call. After this, Defendant began driving back into Mexico and at approximately 5:00 p.m., the defendant was stopped at the outbound lane of the Otay Mesa Port of Entry and taken into custody.

---

[1] HSI Special Agents placed a GPS tracker on the tow truck and began the process of seeking a warrant allowing them to utilize the device, but never used the tracking data in this case because the warrant was not signed in time.

4

2. Back at the San Ysidro Port of Entry, CBP Officer Richards conducted a thorough inspection of the tow truck and discovered a total of five (5) packages concealed in the light bar of the tow truck. Officer Richards removed all packages, weighing approximately 10.90 kgs in total, and again field tested a random package to test the contents. The package again field tested positive for the properties of cocaine. After the drugs were discovered and removed from the Hino tow truck, the Defendant was placed under arrest at approximately 5:00 PM on September 17, 2019.

3. In light of the above facts, and my own experience and training, there is probable cause to believe that Defendant was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States.

4. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning 90 DAYS prior to the Defendant's arrest.

## METHODOLOGY

5. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

6. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

7. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

8. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

9. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960, 963, 841, 846, and 843(b).

6

10. Because the Target Devices were seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Devices. As stated above, I believe that the appropriate date range for this search is from 90 DAYS.

11. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Gary Roy
Homeland Security Investigations

Subscribed and sworn to before me this _____ day of November, 2019.

_____
Hon. Allison M. Goddard
United States Magistrate Judge

7